Thank you. Good morning. My name is Rebecca Pannell representing Mr. Gomez. An important issue in this case is how to make sure that a search warrant permitting a search for paperwork doesn't become a general search in violation of the Fourth Amendment. Let me ask you about that. I'll tell you what was on my mind and you educate me. My garage, I have a whole lot of things in boxes that have labels on them other than what's in them. Canceled checks are in old shoe boxes. They're just the right size. All kinds of other stuff. If it was a sturdy box, I'll have other things in it. Sometimes I'll mark it, sometimes not. So it seems to me it would make perfect sense to have papers in the box marked, what was it, nails or something. And then you've got something in a rag overhead. Well, if one of my guns is wrapped in a rag, no mistaking that it's a gun when I pick it up. For one thing, they're real heavy. They weigh about, oh, four or five pounds. A big handgun and even a small handgun will weigh two or three pounds. And for another, they have a pretty distinctive feel. I can tell it's a gun as soon as I touch the cloth. So it seems like that plain feel doctrine that the Supreme Court laid out in, oh, name slips my mind right now, would make it okay. And so they've got a warrant for papers. Paper is likely to be in a box. They see the box. It's okay to look in a box for papers. They have to take something off the box to look in a box. And as soon as they pick it up, it feels like a gun. It's obviously a gun. They know the guy's a felon, so it's evidence of a crime, felon in possession. And that's the end of it. What am I missing there? Well, there wasn't an evidentiary hearing. And certainly if the police officer had thought it immediately felt like a gun, they know how important that doctrine is. It would have been in the report. Anybody who has guns knows what a gun in a rag feels like. It would have been a nail gun. When I read that report, I thought, why is he bothering to say? He has a nail gun. I do. I've got boxes of nails and no nail gun. I have boxes of nails and nail guns. You know, he said, you read that report, he says, this shed appeared to contain mostly tools. He goes to the trouble of saying this box appeared to contain nail guns. And then he opens the rag. He's supposed to look for paperwork. That's one thing. Number two, look at the totality of the circumstances. So you're saying he needed an evidentiary hearing so the cop could swear, I realized it was a gun as soon as I picked up the rag. It certainly wasn't in the report. We're going well beyond the report to say that's the case. The problem I had was I don't see why it would be inconceivable that someone might keep the driver's license or some other paper wrapped up in a rag with a gun. Well, I think that at the time you picked up the gun, it certainly wasn't a reasonable inference. And let's look at the bigger picture of what was going on here. At the time he went into the shed, they were looking for evidence of a minor crime, not a major crime where you would hide things under cement or something like that, a minor crime. No, but, I mean, the warrant authorized the search for, say, a driver's license. Sure. Why couldn't you have your driver's license with your gun covered by a rag? Well, again, it didn't feel like that. I mean, how do you know until you pick up the rag? Well, it felt heavy, and I think the standard is that is this a reasonable place? And think about is it a reasonable place given that this search already took place after this individual, the officer, was in the kitchen where he found everything. The best evidence for this crime they had before the search ever began, they already had the DOL records. Well, that may be, but the warrant authorized them to go look for certain kinds of papers, including a driver's license, which is a small thing. I mean, it could be hidden under a picture. It could be hidden anywhere, you know. But you're also supposed to limit it in scope. And once you've found what you're looking for, you're not just supposed to engage in a general search for whatever you're going to find. That's what the description makes it look like and certainly what it feels like. And why would you pick up a rag, which you don't say I immediately recognized it as a gun, but describe it as sitting on top of a box of nail gun nails and open it up after you've already had the defendant fully confess, after you've already found all the evidence in the kitchen of the false documents that you're looking for. Again, it's not a major crime where you would expect things to be hidden. What was going on here? Was it really a search for these documents of this minor crime or bringing the FBI along? Was it a search to see, can we turn up on this guy? Address this question. Assuming it was permissible to pick up this object in the rag, right, why doesn't, would the Plainfield Doctrine then apply? I don't know. Given that it wasn't in the report that the person felt it to be a gun immediately, he didn't describe it like that. He described it only after he opened up the rag. At the very least, there should have been an evidentiary hearing. This fell outside the scope of the warrant, so it wasn't covered by sort of the defense hearing. Did the defense ask for an evidentiary hearing? The defense says it's the government's burden to prove and the government didn't put on. So you didn't ask for an evidentiary hearing? I don't believe that an evidentiary hearing was specifically asked for. When this issue was raised, the defense said this is the government's burden to prove and we don't think that this report proves it. And then in that situation, the case law is clear that the government, when you're dealing with something outside the scope of the warrant, the government has a burden of putting on evidence however it may choose and didn't choose to do so by putting on a witness. The other issue is whether or not there was probable cause spelled out in the warrant. And this Court has a very well-established test for residency. That test applies across contexts. The burden, as I recall, is just preponderance, nothing higher. Of residency? Of whatever the government would have to prove. At the evidentiary hearing? At the evidentiary hearing. So in the absence of any request for one, why couldn't the judge just not grant one and draw a reasonable inference as being more probable than not? Based on the report? I think the report doesn't say that. Again, police officers know how important it is to explain why they found something that falls outside of the scope of what's listed in a search warrant. And he didn't say, I recognized it before I opened it up. He said, once I opened it up, I saw it was a gun and took the steps from there. Given that, I don't think it's fair to say I immediately knew it was a gun. There's just not enough information there. The government's criticizing us for saying, how could you have immediately known that it didn't contain paperwork? Given that it only did contain a gun, I think that's a fair inference that I immediately recognize it to be a handgun as opposed to a nail gun, as opposed to some other sort of object. So I think that an evidentiary hearing should have been had if that was what the government thought was established just by that report. With respect to the issue of probable cause, our point is simply that this is a well-established test. When you have a well-established test, that gets you around the good faith exception. Just as a warrant can, the test for whether or not a warrant excuses good faith is the same in the civil context as whether or not an officer can get around qualified immunity. On the probable cause issue, assuming again that, say, the showing was sufficient, why wouldn't the Leon Doctrine apply? Again, the Leon Doctrine doesn't apply because this Court has a very well-established test. In Motley v. Parks, no, it was Quivis v. DeRocco, excuse me, was a civil case where the Court said that our doctrine regarding what probable cause of residency is so well-established that a police officer who doesn't comply with the minimal requirements of that four-factor test cannot get around qualified immunity. The Supreme Court has said that the test for what should be reasonably expected of police officers is the same. Qualified immunity protects officers to the same degree as a warrant. So all of that is well-established. There weren't any of the factors that this Court has recognized of residency to support probable cause of that. Thank you, Ms. Pena. Good morning. Good morning. May it please the Court, Alexander Eckstrom, on behalf of the appellee? I guess your burden in light of the opening argument is to tell us why these inferences could be drawn without an evidentiary hearing or, for that matter, the defendant waives that by not asking for it. Your Honor, to deal with the last issue first, the government submitted in its supplemental excerpt of record the original briefing by the parties. And from there, the government would assert that it's a fair characterization that the issue of the actual search of the rag was a very small portion and not the focus of the defendant's challenge to the search of the shed, that most of the defendant's fire in that hearing was directed towards the propriety of the search. Were you saying they waived the issue, or were you just saying they raised the issue, but they were arguing more strongly on others? They did raise the issue, so I cannot argue waiver. What does it matter, then? The Court had asked why it wasn't developed, and I'm indicating that's why it was developed. I understood Judge Tashima's question to be, how come you didn't ask for an evidentiary hearing? Because we believed that while the report is sparse, reasonable inferences would show that the blue rag on top of the box that was determined to contain nails, however, it was not marked as containing nails. The way I remember these things, the government never demands evidentiary hearings because it's just exposing its own agents to some discovery. Usually the defendant asks for the evidentiary hearing, but if I recollect correctly, defense counsel is right that the government has the burden here of showing that it was proper search. Yes, Your Honor, and I believe that based on this report, we can show that it's a proper search. Again, because the blue rag is sitting on top of the box of nails, one has to remove the rag to get at the box to conduct the further search of the box, and by picking up the item, the fact that the Ruger 9mm handgun will be apparent on its face. It will be apparent to be a firearm and not a nail gun. What's your response to defense counsel's argument from ER 9 that the police officer's report doesn't say that? Doesn't say that it was immediately apparent? It doesn't say, as soon as I picked up the rag, I knew it was a gun. It says on top of the box I located an item wrapped in a blue rag. The item was identified as a loaded handgun. The government concedes that that is not in there, and we are arguing from inference. You mean it's an obviously reasonable inference? Yes, that is the government's position. I'm not all that familiar with a nail gun. I use a hammer. My guess would be other kinds of power tools are all kinds of handguns. I mean nail guns, just like there are all kinds of handguns. There are all types of handguns, as there are all types of nail guns. I suppose some nail guns could be configured way similarly to a handgun, at least when it's wrapped in a rag, right? That's possible, isn't it? Your Honor, I don't believe it would be. My analogy would be to the difference between a 9mm handgun and a drill. Drills have multiple configurations, but they are distinctly different and immediately identifiable as different from a handgun. Is that true with nail guns? Yes, Your Honor, I believe they are. Is it a matter of common knowledge? I believe it would be a matter of common knowledge, particularly for an officer who has conducted searches. You mean searches for nail guns? Because he knows the whole range of nail guns that are sold at Home Depot or wherever you buy them? Yes, Your Honor, because the officer indicated that the box contained nails that were consistent with the use of a nail gun. They come in strips and therefore feed into a slot. They are configured differently. They're going to be either powered mostly by compressed air, so the head of the nail gun will be much bigger than the slide of a firearm. They will be distinctly different in shape, just as a drill is different from a firearm. That's a matter of common knowledge. Everybody knows that, except maybe Judge Kleinfeld and me. Well, maybe he knows it. No, I just have a hammer. I know what guns feel like, but not nail guns. I wouldn't even know which end of a screwdriver to use, so this is lost on me. I don't understand why we're getting mired in this. It seems to me the question is, can you have paperwork that was encompassed within the warrant, possibly covered by a rag? And if the answer is yes, doesn't that dispose of the case? I believe it does, and I believe the two cases cited in the government's brief, those being Disla and Honoré, cover that issue, where in Disla, the search and seizure of cocaine from socks that could have contained among the blue box that was used for pirating phone service, also paperwork. If the scope of the search... You can't look for an elephant in a suitcase, so if it's possible to have paperwork covered by a rag, it seems to me you can pick up the rag and see if the paperwork is there. That's the government's position, and Honoré is even more on point, where a semi-automatic carbine and two license plates were found in a towel, where the search was again for paperwork, and therefore the search of the towel was appropriate. And the government believes that those two cases, which are still good law, do control on the issue. What about on the... Tell us what's wrong with Ms. Pinell's argument that it's clear, assuming there's no probable cause, that Leon doesn't apply because this is a search of a home. I'm sorry, Honoré, I don't believe I understand the question. Well, Ms. Pinell's argument was the cases are clear that, you know, if you're trying to make a determination of whether the Leon Goodfaith exception applies, the test that's applied to a search of a home is more stringent, as maybe it should be, than, you know, other types of searches, and the cases are clear that, in these circumstances, the Leon Goodfaith exception would not apply. Is that her argument? Her argument, as the government understands it, is based on the four-part test from Howard, which requires probable cause of residency of the individual. The government believes that those cases are distinguishable, in that they deal with a warrantless search for a probation or for a violation of probation. But what they have to do is deal with the, you know, the showing of probable cause, right? Certainly, but in this instance, the probable cause standard comes not from Howard, but rather from Illinois v. Gates, in that we must only show a reasonable probability that the evidence of the crime could be found in the location, and under case law we need not show direct evidence. However, in this case, the government believes that, under the facts of this case, it was quite reasonable to believe that the evidence would be found there. We have an individual who is a convicted felon, who is actually an aggravated alien upon reentry, who has provided information regarding his residency that, to the extent that it was able to be confirmed, was shown to be false. It was patently unreasonable to believe that he would be found at any of the addresses he had given in light of his status. And therefore, in this case, the fact that the information from Confidential Human Source 2, Buttress By Source 1, Special Agent Pitt, and the records research reasonably led the officers to the North Hugo address. I have nothing further unless the Court has questions of me. Thank you, Mr. Ekstrom. Ms. Pinnell, back to you. I think you have almost two minutes left. Thank you. Your Honor, every search nowadays allows officers to look for paperwork, be it only in DSHA. So the question to ask is, does that mean that every search, if paperwork can be found anywhere, and a police officer is going to have to ask himself, is it likely I'm going to find paperwork here? If it's just physically possible, if that's the only test, then I don't know that we do have a protection against general warrants. But I don't think we're there. You don't think a warrant that says you can search for paperwork authorizes the officer to look anywhere paperwork could be? I think there needs to be. Is it reasonable to think? How do you know where people are going to hide it? They're dealing with possible criminals. Sure, but look at what's reasonable in this case. It wasn't just 8 1⁄2 by 11 papers. It was driver's licenses, and those were about 2 inches by 3 inches in stiff. So at least with the shelter of Leon, since there was a search warrant, I don't see why the officer would necessarily know he was acting unconstitutionally, looking for a driver's license in a ring. Sure, but what was found here was not identified in the warrant, so it's not covered by Leon. But also look at the totality of the circumstances. Sure, they could look for driver's licenses, but look at the totality of the circumstances of this individual case. We're not dealing with an officer where the first place he confronted was this shed and was the tools. We're looking at someone who's found everything they're looking for. They have more than enough evidence to convict the guy. At that point in time, was this person really engaged in the search for licenses that he's already found, for the Department of Licensing paperwork that he's already found, for evidence that the guy's already admitted to, or was he engaged in a general search? That's what we think happened.
judges: Kleinfeld, Tashima, Silverman